EB

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Appellee<br><br>v.<br><br>MARK IAN GAVER,<br>Appellant | USCA4 No.: 21-7553 |

**APPELLANT'S INFORMAL RESPONSE
TO THE GOVERNMENT'S INFORMAL BRIEF**

COMES NOW Appellant, hereby files this informal response to the government's informal brief pro se.

The government filed its informal brief, in the above styled case, on March 2, 2023, in response to the appellant's informal brief appealing the District Court's denial of his Ineffective Assistance of Counsel Motion - under 29 U.S.C. § 2255 - and his subsequent request for a Certificate of Appealability (COA).

The government's extensive informal brief utilizes a broad brush approach to level salacious accusations against the Appellant in order incite this court against him. By "cherry picking" bits and pieces from mountains of testimony, off-the-cuff comments and hand-scribbled notes taken over a period of more than eighteen months the government has put together what appears to be a damning exposé. The trouble with the government's narrative is the fact that they focus of events that occurred commencing July 23, 2018, the first day of the Appellant's trial by jury. However, in reality the only question at hand should be: what did the appellant's trial attorneys do to fulfill their professional obligation regarding any government proffered plea agreement – prior to July 23, 2018?

1

In order to answer that question one must go back to February 7, 2018 - the date the government states that they submitted a plea offer to appellant's trial counselors, Messrs. Zonas and Hamish. It should be noted that the appellant was incarcerated in Maryland and his attorneys are headquartered in Southwest Florida.

Appellant makes the assumption that, as it is in most cases a plea offer has an expiration date. Normally, as the appellant has been informed, plea offers are valid for a period of one week from the date of the offer. Thus, proffered plea in question would have expired on February 14, 2018. Defense counsel makes no claim that they traveled to Maryland, or attempted by any other available means, to ensure the plea offer was received by and explained to the appellant between February 7 and February 14, 2018.

Of great importance is the fact that on February 9, 2018 the appellant experienced a medical emergency resulting in a trip to the Emergency Room. The appellant was ambulanced to Mercy Hospital in Baltimore and released seven hours later with a diagnoses of dehydration. Between February 10 and February 13, 2018 the appellant was transferred back and forth between the Chesapeake Detention Facility (CDF) and a facility know to him only as MTC – a prison infirmary. When his symptoms persisted the appellant was taken via ambulance to Med Star Harbor Hospital Baltimore. Once there he was diagnosed with dangerously low total body sodium levels and admitted. He is released to MTC and eventually CDF on February 18, 2018. All of this medical information is verified by Exhibit A – pg. 1 through 5, attached herein.

During that period - February 7 to February 18 - not only did the trial counselors make no concerted effort to guarantee that the government's offer of a plea agreement was properly and verifiably transmitted and explained to the appellant. Neither have the trial attorneys made any claim that they attempted to perform this required duty. As to that fact it is clear for even though the appellant waived his right to attorney client privilege – going back to the initial submission of his Motion § 2255 - there is no record of any contradictory claim by the trial attorney's or the

2

government, that would refute this claim of ineffective assistance of counsel during the plea bargaining process.

As this Court is well aware in 1991 the Fourth Circuit's precedent for effective assistance of counsel during the plea bargaining process was established in *Jones v. Murray, 947 F.2d 1106 1110-11 (Oct.1, 1991)*. This standard has provided the following guidance concerning this court's acceptable professional standard of conduct for defense attorneys with regard to plea agreements, stating*: "a defendant's counsel has the following duty surrounding plea negotiations: 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable out comes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision."* (Emphasis added)

How did the appellant's trial counselors comply with this Court's four tenets of *Jones v. Murray*? Very Simply – they did not. Trial counsel failed to observe any of the principles prescribed by the Court in the above referenced decision.

Additionally, the Supreme Court found in *Missouri v. Frye, 566 U.S. 134, 143, 132 SCt. 1399, L.Ed 2d 379 (2012)* that: **"In the case of a petitioner claiming the ineffective of counsel during the plea bargaining process, a petitioner can meet the first requirement of the *Strickland* test by showing that defense counsel failed to inform him of a plea offer from the prosecution."** (Emphasis added) As the Appellant has done previously and herein.

The Supreme Court further states, in *Frye*: **"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused..."** Additionally, the Court continues, **"When defense counsel allow[s] the [plea] offer to expire without advising {U.S. Dist. LEXIS 7} the defendant or allowing him to consider it, defense counsel [does] not render the effective assistance the constitution requires."** *Id.* at 145. (Emphasis added)

3

Finally, despite the efforts of the District Court, and the assertions of government prosecutors, there is no established precedent to justify that the District Courts interrogation of the Appellant on July 23, 2018, the first day of trial, provides a legal replacement for the effective assistance of counsel that was required of the appellants own attorneys. Despite the fact the District Court was well aware that pressuring the appellant into making an immediate decision, to accept or reject a plea offer moments prior to the commencement of a trial, is lacking any precedent as established by this Circuit Court or the U.S. Supreme Court.

The first opportunity trial counsel made to meet with the appellant, after the February 7th issuance of the plea offer by the government, was on March 8, 2018. Messrs. Zonas and Hamish took a commercial flight from Florida to Maryland on that Thursday morning to meet with their client and to be present when he was to meet government prosecutors. The attorneys were scheduled to arrive at the Chesapeake Detention Facility (CDF) for a 9:00 AM meeting with their client. However that meeting never took place as neither Zonas nor Hamish properly notified CDF officials of their desire to meet with the appellant. The attorney's admittance to the facility on the morning of March 8, 2018 was denied.

Later that morning the appellant, being eager to meet with government prosecutors, was injured in a fall on the way out of the detention facility. While the government enjoys poking fun at the appellant for his numerous medical conditions, including his documented need for a cane, they obviously have no idea how difficult it can be to suffer from diabetic neuropathy of the feet, lower legs and hands. This progressive nerve damage has caused lack of feeling in the appellants lower extremities, which necessitates the use of a cane for balance and mobility. That condition continues to worsen every day and when coupled with a degenerative disorder in the appellants left hip become excruciatingly unbearable. Apparently the government believes that if a prisoner desires a cane he simply strolls down to the local medical equipment proprietor and purchases one – when actually a cane must be medically prescribed by a jailhouse physician, as the appellants

4

was and is to this day. If the government were a little more focused on justice they would perhaps show some sympathy for an older man who suffers from many physical maladies, including diabetes, kidney disease, hypertension, heart disease (the appellant has suffered two heart attacks – in 2004 and 2014), essential tremor, retinopathy, and hearing loss among others.

When preparing to leave CDF to meet prosecutors the facility transportation employees refused to allow the appellant use of his cane. They then proceeded to manacle, hand-cuff and bodily chain the appellant, a technic known as "three point confinement." This created a situation that doomed the appellant to failure in his attempt successfully traverse a steep ramp leading to the prisoner exit of CDF. When he was bumped from behind by another prisoner the appellant fell to the concrete floor. Being chained the way he was he laid on the floor for more than twenty minutes before a CDF employee removed the chains and assisted him to his feet. The appellant was promptly sent to the medical department where he was treated – See Exhibit B – pg.1. Thus, he missed transportation to the planned meeting.

After having his injuries attended to the appellant called his attorneys to report why he had no made the planned meeting. On the afternoon of March 8th the appellant was allowed to see his Case Manager where he requested that his attorneys be permitted to visit him. Admission to the facility was finally granted to Zonas and Hamish at approximately 3:45 PM – Thursday, March 8, 2018.

This meeting was the first time the appellant had either met or spoke to attorney Zonas. When the appellant requested that the meeting with the government be rescheduled Zonas, who intimated that he was the "lead attorney," stated that the meeting would not be rescheduled. He went further stating that the meeting had been set by attorney Hamish without his knowledge and he did not want the appellant speaking to government prosecutors, and so it was.

This short-lived meeting with Zonas and Hamish was not focused on this case but, rather, on their desire to bring legal action against a number of Florida lawyers who had taken advantage of

5

the appellant during the pendency of his divorce case – one such counselor charged the appellant a one hundred twenty thousand dollar retainer and never even bothered to file a notice of appearance with the Florida Court. Additionally, as Zonas and Hamish had a return airline flight to Florida shortly after 6:00 PM this meeting only lasted about forty minutes.

The on March 22, 2018 the appellant attempted to contact Zonas via telephone, on both his mobile and office numbers. Both of those attempts proved unsuccessful because when the attorney saw that it was the appellant calling he picked up the receiver only to immediately hang-up it back up – terminating the call with his client. On the next attempt made by the appellant he found that his "Lead Attorney" had "Blocked" his telephone calls. Months later when asked why he had blocked his client's calls "Lead Attorney" Zonas retorted: **"I don't take phone calls from prisoners."** (Emphasis added)

This would be the last meeting the appellant would have with his trial counselors until they appeared at CDF on Saturday, July 21, 2018 – two days before the scheduled commencement of the trial At this brief July 21 meeting the appellant was informed that his attorney did not plan to present any defense and they never spoke of a plea offer from the government. The appellants trial ended on August 1, 2018 and beyond the attendance of attorney Hamish, at a scheduled August 30, 2018 Pre-Sentencing Investigation interview, the appellant never heard from either attorney again.

On September 28, 2018 Zonas and Hamish filed their Motion to be relieved of their obligations in this case, See- Exhibit C page 1. JCA attorney Levin was installed as the appellant's counselor on December 5, 2018 with the filing of his Notice of Appearance, a mere eight days prior to his sentencing, See – Exhibit C – pg. 3.

## CONCLUSION

The U.S. Department of Justice is the best underwritten and staffed law firm in the world, they even has the full resources of the FBI as their investigative group. The ability for the

government to obtain whatever information it desires is wide ranging, as is demonstrated in this very case. And yet these government prosecutors have not been successful in garnering readily available and definitive evidence pertaining to this ineffective assistance of counsel claim.

For instance, as part and particle to the filing of his § 2255 Motion the appellant was required to waive his right to attorney/client privilege – which he did. This action gave the government unfettered access to the appellant's attorneys, allowing them to interview, interrogate, obtain sworn affidavits and gather copies of any and all documentation necessary to disprove the appellant's claimed grounds in his filing. The government allegedly did this and yet while they were able to obtain a sworn affidavit from attorney Zonas they were not able to obtain evidence that trial counsel had complied with the tenets the either the *Jones* or *Frye* precedents. Nowhere in any of the statements made by the appellant's trial counsel have they claimed to have fulfilled any of this court's mandated elements for compliance with effective counseling during the plea bargain process.

The appellant attempted to obtain evidence that would definitively document how, when and what information had been transmitted to him by his trial counselors. Motions were filed by the appellant requesting data with respect to CDF legal mail log, CDF attorney visitation log, and CDF telephone log involving the appellant – all such requests were DENIED by the District Court. Furthermore, government prosecutors have known of the appellant's claim of ineffective assistance of counsel in the plea bargaining process for some eighteen months now and yet they are still unable to produce evidence to prove otherwise. In fact the only statement made by trial counsel regarding their handling of the plea agreement was cleared stated by attorney Zones on July 23, 2018 when he stated: "I thought we mailed that, but that was a long time ago."

On the first day of trial the District Court's inquest of the appellant - relative to his acceptance or rejection of a long expired plea offer was not an offer of assistance, it was a demand for an immediate answer. The court made no offer or suggestion that the defense take a recess for the

7

attorney's to counsel their client with regard to the directive from the bench. Instead the court delivered an ultimatum to the appellant, "It's not a trick question Mr. Gaver. Yes or No." This action, by the court, does not in any way, replace, supplant or dispose of the trial attorney's obligation to provide legal counseling to the appellant relative to the plea bargaining process.

Attorney's Zonas and Hamish were woefully inexperienced in defending any client against federal charges. Zonas had been involved in merely one prior federal case and Hamish had never represented any client in federal court. Additionally, Hamish, who had been the appellant's divorce lawyer, had never been in a federal courtroom and had absolutely no prior experience in the practice of criminal law until this case. None of these important facts were ever reveled to the appellant by his counselors, instead they deceived him into believing that they were competent criminal attorneys with years of experience. The government was well aware of this lack of expertise brought by Zonas and Hamish and they took full advantage of that deficiency.

Also, Zonas and Hamish purposely limited their availability to the appellant resulting in extremely inadequate contact between the defense parties. The appellant was only permitted to meet with his "Lead Attorney", Zonas, twice between January 25, 2018 and July 23, 2018. Neither of those encounters involved substantive discussion with regard to the criminal case at hand. In fact, the appellant's limited attempts to discuss the facts of this case with his lawyers were met the following Zonas statements:

- "We signed an agreement with government that forbids us from telling you what the evidence is against you." And,
- "If you do not go to trial and win you are going to prison for one hundred fifty years."

Had the appellant been properly and honestly counseled by his trial attorney's regarding:

1. the evidence against him,
2. the governments near perfect record of conviction,

8

3. losing at trial would result in a fifty to eighty percent increase in the number of years of imprisonment,

4. the governments offer of a plea agreement,

    a. what was the plea offer,

    b. how accepting a plea agreement effected one's constitutional rights,

    c. what do federal sentencing guidelines mean,

    d. how do "sentencing points" equated to years of imprisonment,

5. how the treatment of federal prisoner was not as draconian or brutal as the appellant was experiencing at CDF, and finally,

6. the appellant's long-term incarceration was predestined and he needed to get use to that idea.

Given the above enumerated pieces of information the appellant would have accepted a plea offer. Instead he was left unapprised and misled by the only people he believed he could trust for legal advice. As such, the appellant was denied the opportunity to ever evaluate the plea agreement that was proffered by the government with a professional legal counsel to assist him. That is ineffective assistance of counsel.

The appellant humbly requests that his sentence be set-aside, with instructions provided to the District Court, he be allowed legal representation and, finally, permitted the opportunity to knowledgably accept or reject the plea agreement that was originally proffered by the government in 2018.

Respectfully Submitted,

*/s/ Mark I. Gaver*

MARK I. GAVER, Appellant
Register No. 69643-018
Federal Correctional Institution
P.O. Box 779800
Miami, Florida  33177-9800

MAY 2, 2023
Date
(28 USC § 1746)

9

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of this Motion has been furnished, via U.S. Postal Service First-Class Mail on this __2nd__ day of __MAY 2023__, to:

U.S. Department of Justice
United States Attorney's Office
District of Maryland
ATTN: B. Moore, AUSA
36 Charles Street, Fourth Floor
Baltimore, MD 21201

 

Respectfully Submitted,

__MAY 2, 2023__
Date
(28 USC § 1746)

MARK I. GAVER, Appellant
Register No. 69643-018
Federal Correctional Institution
P.O. Box 779800
Miami, Florida 33177-9800

10

EXHIBIT A - pg. 1

## OFFICE OF INMATE HEALTH SERVICES

**SITE:** MCAC
**COMPLETED BY:** Sonja Wilson, MD   02/09/2018 4:59 PM

**PATIENT:** MARK GAVER
**DATE OF BIRTH:** ▮▮▮▮961
**DATE:** 02/09/2018 4:59 PM
**VISIT TYPE:** Provider Visit-unscheduled/. URGENT VISIT.

**Reason(s) for visit**
1. I PASSED OUT.   56 Y/O MALE WITH A H/O DM, HTN, HYPERLIPIDEMIA AND CORONARY ARTERY DISEASE S/P MI X 2 AND S/P CARDIAC STENT X 2
MEDICAL EMERGENCY AND REPORTS "I PASSED OUT": THE PATIENT STATES THAT HE WAS TALKING ON THE TELEPHONE AND HE FELT LIGHTHEADED AND PASSED OUT.
HE STATES THAT HE DOES NOT WANT TO GO TO THE INFIRMARY.
HE HAS NO C/O CHEST PAIN, SOB, DOE OR LEG SWELLING.
HE HAS NO C/O HEADACHE OR VISUAL CHANGES.
THE PATIENT LATER REPORTED THAT HE HAS ANGINA EVERYDAY BUT NOT TODAY WHEN THIS OCCURRED.
HE STATES THAT HE HIT THE BACK OF HIS HEAD ON THE FLOOR WHEN HE LOST CONSCIOUSNESS. .
HE STATES THAT HE HAS NO BLEEDING FROM ANY PART OF HIS BODY.
HE STATES THAT HE HAS NO BLEEDING FROM ANY PART OF HIS BODY.
HE STATES THAT HE IS FEELING LIGHTHEADED AT 1730 HOURS.
THE PATIENT LATER REPORTED THAT HE IS FEELING LIGHTHEADED AT 1730 HOURS.
THE NURSE ON DUTY HAS GIVEN HIM THREE CUPS OF WATER TO DRINK.
THEPATIENT REPORTS THAT HE HAD A SMILAR EPISODE ABOUT SIX MONTHS AGO WHILE IN THE BAHAMAS THOUGHT SECONDARY TO DEHYDRATION. HE STATES THAT HE WAS SEEN AT A LOCAL ER AT THAT TIME AND RELEASED.

**Chronic Problems**
old myocardial infarct - 412
Cardiac device in situ NOS
Hyperlipidemia NEC/NOS
Diabetes Mellitus
Hypertension, essential NOS

**Past Medical History**
Reviewed, no changes.

**Allergies:**
| Allergen/Ingredient | Brand | Reaction: |
|---|---|---|
| No Known Drug Allergies | | |

The patient is a former tobacco user.

**Vital Signs**
| Time | Ht Ft | Ht In | HeightMethod | Wt Lb | Wt Kg | Weight Context | BMI |
|---|---|---|---|---|---|---|---|
| 5:09 PM | | 72.0 | carried forward | | | | |

| Time | Temp | Route | BP | Position | Site | Method | Cuff | Pulse | Pattern |
|---|---|---|---|---|---|---|---|---|---|
| 5:09 PM | 97.7 | | 103/70 | sitting | | | | 87 | |

| Time | Resp | PulseOx | PulseOxAmb | Timing | PeakFlow | Timing | Method |
|---|---|---|---|---|---|---|---|
| 5:09 PM | 18 | 96 | | | | | |

| Time | PainScore | HAQ Score | FiO2 | L/min | FiO2 Deliv Method |
|---|---|---|---|---|---|

4603241 GAVER, MARK   ▮▮▮961   1/3

EXHIBIT A - pg. 2

# CONSULTATION

**SITE: MTC INF 3RD FL**
**COMPLETED BY:** Sadik Ali, MD     02/15/2018 8:58 AM

**Patient:** MARK GAVER     **ID#:** 461147     **DOB:** ▮▮▮961

Off-site
Urgent

Reference #:
Date of Request: 02/15/2018 8:58 AM

For security reasons, inmates must NOT be informed of date, time or location of proposed treatment or possible hospitalization. Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions. Prior review/discussion with Medical Director is required for additional treatment, procedures and hospitalizations

Procedure/Test Requested: Evaluate & manage accordingly

Specialty Service Requested: JHH, ER, by 911

Provider: ER MD
Initial Visit or F/U? Initial Visit

**Presumed Diagnosis:**
HYPONATREMIA                     276.1
Diabetes Mellitus                250
Hypertension, essential NOS      401.9

Signs & Symptoms:                Date of Onset:

This is a 56 y/o cm admitted to the infirmary 2/13/18 secondary to two isolated incidences of syncope: 2/9/18) and 2/12/18. According to the pt, both incidences happened while he was standing in line waiting for his medication. He was sent to Mercy Medical Center ER where he was diagnosed with vasovagal reaction and dehydration per EPHR. He has a h/o DM, HTN, Hyperlipidemia and CAD s/p MI X 2 and cardiac stent X 2, however denies ever having a cardic device implanted.
PANIC LAB RESULTS
Today, per CMP results collected 2/12/18, ( Na 118, Cl 73, BUN 25, Total Bilirubin 25). Pt is A&Ox3, afebrile, denies cp, sob, n/v, headache, fatigue, muscle weakness, cramps, spasms, orthopnea, dyspnea. VS stable as below. STAT CMP, at BSH lab confirmed Na+=119; Cl- 0f 80; therefore, patient will be sent out to ER, by 911, for management of Severe Hyponatremia, etiology unknown.

NAME: GAVER, MARK
NUMBER: ▮▮114
D.O.B.: ▮▮/196

EXHIBIT A - pg. 3

# MedStar Harbor Hospital

Patient: GAVER, MARK I
Med Rec #: HBR-000898500
Account #: HBR-09019508648
Date of Birth: [redacted]/61  Age: 60 years  Sex: Male
Location: HBR South Main 3

Admit/Discharge: 2/15/2018 / 2/18/2018
Admitting Doctor: Cameron,MD,Darius M.
Ordering Doctor: n/a

## Discharge Documentation

DOCUMENT NAME:
PERFORM INFORMATION:
RESULT STATUS:
SERVICE DATE/TIME:
SIGN INFORMATION:

Discharge Summary
Nagamallika Jasti,MD (2/18/2018 11:33 EST)
Auth (Verified)
2/18/2018 11:24 EST
Nagamallika Jasti,MD (2/18/2018 11:33 EST)

### General Discharge Information
Admission Date and Time: 05:15 pm on Feb 15, 2018
Attending Physician: Darius M. Cameron, MD

Discharge Date: 2/18/18

### Chief Complaint
Syncopal episode at jail, per patient he has had three episodes in the past week

### Presentation and Hospital Course
#Severe Acute on Chronic Hyponatremia, improved
Na- 135
-Na 115 on admission; on Feb 8 at Mercy- Na was 129. presumably low sodium levels prior to this as well.
-DDx: likely SIADH 2/2 medication side effect (Amitriptyline) vs. primary polydipsia vs. volume depletion vs. pulmonary pathology vs. hypothyroidism vs. substance use (ecstasy)
- on NS @100cc/h; ensure strict I/Os
- TSH WNL UTox, UA, Lipid panel, Total protein, cortisol level AM: neg
Evaluated by nephrology, placed on free water restriction, received Iv fluids, sodium levels improved

#Syncopal episode
-likely vasovagal vs. dehydration induced; 94/65 upon arrival
-He reports poor oral intake in Jail and most recent episode occurs in the setting of blood draw
-Cardiac Monitoring
-EKG: NSR 80bpm, QTc 486ms, no ST changes. Rpt EKG shows QTc 459ms. Troponin <0.015.

#HTN, controlled
-hold lisinopril

#DM Type 2
-continue low SSI, will discharge on po metformin

#CAD s/p MI
-Atorvastatin 20 mg, ASA, Plavix

#Constipation

### Problem List/Past Medical History
Ongoing
Diabetes
Hypertension
Historical
No qualifying data

### Medications

Medications at Time of Discharge (6) as of 02/18/2018 11:24
* indicates a medication that was prescribed. All other listed medications are being continued.

(1) aspirin:
  81 mg = 1 tab PO Daily

(2) atorvastatin (atorvastatin 20 mg oral tablet):
  20 mg = 1 tab PO Daily

(3) clopidogrel (PlaVIX 75 mg oral tablet):
  75 mg = 1 tab PO Daily

(4) fluticasone nasal (fluticasone 50 mcg/inh nasal spray):
  50 mcg = 1 inhl Nasal 2x/day

(5) metFORMIN:
  500 mg = 1 tab PO 2x/day

(6) *polyethylene glycol 3350 (polyethylene glycol 3350 oral powder for reconstitution):
  17 gm PO Daily PRN constipation
  Stop on: Saturday 02-24-18

Reconciliation History

Print Date/Time: 6/9/2022 11:53 EDT
Report Request ID: 407143152

www.medstarhealth.org

Page 7 of 84

OFFICE OF INMATE HEALTH SERVICES

**SITE: MTC**
**COMPLETED BY:** Oyindamola Williams, RN   02/18/2018 4:03 PM
**Patient Name:** MARK GAVER
**IDOC#:** 461147
**DOB:** ████/1961

---

Patient presenting with chief complaint(s) of: **MedStar Harbor Hospital return..**

**Vital Signs:**

| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow |
|---|---|---|---|---|---|---|---|---|---|
| 02/18/2018 | 4:05 PM | 97.9 | 84 | | 16 | | 106/73 | 98 | |

MISCELLANEOUS AND OTHER COMPLAINTS

**Subjective:**
Date of Onset: 02/18/2018.
Associated symptoms: " Am fine, that why hospital diascharged me". Denied chest pain, SOB, dizziness, nausea, vomiting and dizzines. Reported that he was sent out to the hospital Thursday because he was passing out. Reported that he has H/O small cell CA of the lungs, he received 16 momths of chemotherapy and the CA is in remission. Reported that he has two myucardiac infact in 2004 and 2014. Reportd that he has H/O degenerative bone dse at Lt hip
Previous history? No.
Previous treatment? No.

**Objective:**
Physical Examination Findings
Pt is a 56 Y/O Caucasian male a CDF inmate who was discharged today from MedStar Harbour Hospitall with Dx of hyponatremia. Pt is alox4 and in no apparent acute distress. FS was 102mg/dl. Respiration regular and unlaboured. Lungs clear. HR regular. Skin dry and warm dry to touch. Skin turgor good. Speech clear and coherent. Ambulated with a wheelchair without difficulty.

**Assessment:**
Altered Health maintamnace R/T to discharged DX of hyponatremia, PMH of HTN, DM,

**Plan:**
**MEDICATIONS**

| Brand Name | Dose | Sig Codes | Start Date | Stop Date |
|---|---|---|---|---|
| Amlodipine Besylate | 10 Mg | 1 PO QD | 02/15/2018 | 03/15/2018 |
| Saline Wound Wash | 0.9 % | | 02/15/2018 | 02/18/2018 |
| Metformin Hcl | 500 Mg | 1 PO BID | 02/14/2018 | 04/14/2018 |
| Fingerstix | | | 02/14/2018 | 04/14/2018 |
| Aspirin Ec | 81 Mg | 1 PO QD | 02/13/2018 | 06/13/2018 |
| Atorvastatin Calcium | 20 Mg | 1 PO HS | 02/13/2018 | 06/13/2018 |
| Plavix | 75 Mg | 1 TAB PO Q DAY. | 02/13/2018 | 06/13/2018 |
| Reguloid | | 1 dose in 12 ozs H20 qd. | 02/13/2018 | 06/13/2018 |
| Amitriptyline Hcl | 25 Mg | 1 PO QHS PRN. | 02/13/2018 | 03/13/2018 |

**ORDERS**

GAVER, MARK  ████ 1961   1 / 2

EXHIBIT A-pg. 5

OFFICE OF INMATE HEALTH SERVICES

**SITE: MCAC**
COMPLETED BY: Catherine Koskei, RN    02/18/2018 11:15 PM
NAME: GAVER, MARK
IDOC #: 461147
DOB: ▓▓▓▓▓ 961

## HOSPITAL RETURN-MEDSTAR HARBOR HOSP VIA MTC

### Medical Record Review
Transfer form, Medical Record reviewed for psychotropic medications, mental health conditions, suicidal history, required follow-up behavioral health.

### Subjective
Current medical, behavioral health, dental complaint including suicidal ideations: no

### Objective

| BP | Pulse | Respirations | Temperature |
|---|---|---|---|
| 113/84 | 78 | 18 | 97.2 |

Physical Appearance/Behavior: NORMAL

Signs of Abuse/Trauma: no

### Assessment Inmate Transfer Review

Medications new, active or stopped this visit

| Brand Name | Dose | Sig Codes | Start Date | Stop Date |
|---|---|---|---|---|
| Polyethylene Glycol 3350 | 17 Gram | 1 PO BID | 02/18/2018 | 03/18/2018 |
| Amlodipine Besylate | 10 Mg | 1 PO QD | 02/15/2018 | 03/15/2018 |
| Saline Wound Wash | 0.9 % | | 02/15/2018 | 02/18/2018 |
| Metformin Hcl | 500 Mg | 1 PO BID | 02/14/2018 | 04/14/2018 |
| Fingerstix | | | 02/14/2018 | 04/14/2018 |
| Aspirin Ec | 81 Mg | 1 PO QD | 02/13/2018 | 06/13/2018 |
| Atorvastatin Calcium | 20 Mg | 1 PO HS | 02/13/2018 | 06/13/2018 |
| Plavix | 75 Mg | 1 TAB PO Q DAY. | 02/13/2018 | 06/13/2018 |
| Reguloid | | 1 dose in 12 ozs H20 qd. | 02/13/2018 | 06/13/2018 |
| Amitriptyline Hcl | 25 Mg | 1 PO QHS PRN. | 02/13/2018 | 03/13/2018 |

### Comments
Detaine received back from MTC ,alert and oriented x3,negative of any ditress,no SOB. Detainee reported to have been d> with hyponatremia,SEE EPHR.DETAINEE on a wheelchair as he was reported to have been weak in ambulation.Detainee stated that he lost his walking cane while in MTC.Detainee was provided witha new walking cane and signed for it witnesse this writer.Detainee in stable general condition though looking weak.. detainee received his PM medications./Detainee to be by onsite provider.

Provider: Sonja Wilson, MD MD
Document generated by: Catherine Koskei, RN 02/18/2018 11:22 PM

GAVER, MARK    ▓▓▓ 1961    1/1

OFFICE OF INMATE HEALTH SERVICES

**SITE: MCAC**
COMPLETED BY: Carol C. Madueke, RN   03/08/2018 9:49 AM
Patient Name: MARK GAVER
IDOC#: 461147
DOB: ▮▮▮▮▮ 1961

Patient presenting with chief complaint(s) of: S/P FALL.

Vital Signs:

| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow |
|---|---|---|---|---|---|---|---|---|---|
| 03/08/2018 | 9:50 AM | 97.6 | 91 | regular | 18 | | 131/86 | 96 | |

MISCELLANEOUS AND OTHER COMPLAINTS: n/a

Subjective:
Date of Onset: 03/08/2018.
Associated symptoms: Custody called for medical emergency, writer went down to receiving immediately, observed Detainee lying floor on his back, stated; "They took away my cane and I fell"
Previous history? No.
Previous treatment? No.
Result of injury? No.

Objective:
Physical Examination Findings
Detainee alert, verbal and oriented x3, respiration even and non labored, skin warm and dry to touch, no signs and symptoms of any injury or discoloration, no change in level of consciousness, vitals within normal limit.

Assessment: Pain

Plan: Was brought to medical unit in wheel chair for further assessment by oncall Md, medicated for pain with Rob and Tylenol as ordered with positive effect, Detainee escorted back to housing unit in stable condition, (ambulated housing unit with a cane with no difficulty), Xray ordered per Md's order

MEDICATIONS

| Brand Name | Dose | Sig Codes | Start Date | Stop Date |
|---|---|---|---|---|
| Fingerstix | | ACCUCK 2X PER WK. | 02/22/2018 | 08/22/2018 |
| Reguloid | | 1 dose in 12 ozs H20 qd. | 02/22/2018 | 06/22/2018 |
| Amlodipine Besylate | 10 Mg | 1 PO QD | 02/22/2018 | 06/22/2018 |
| Atorvastatin Calcium | 20 Mg | 1 PO HS | 02/22/2018 | 06/22/2018 |
| Aspirin Ec | 81 Mg | 1 PO QD | 02/22/2018 | 06/22/2018 |
| Metformin Hcl | 500 Mg | 1 PO BID | 02/22/2018 | 06/22/2018 |
| Plavix | 75 Mg | 1 TAB PO Q DAY. | 02/22/2018 | 06/22/2018 |
| Robaxin | 500 Mg | 1 TAB PO BID PRN | 02/22/2018 | 04/22/2018 |
| Tylenol | 325 Mg | 2 TAB PO BID PRN. | 02/22/2018 | 03/22/2018 |

ORDERS

GAVER, MARK  ▮▮▮▮ /1961  1 / 2

| | | |
|---|---|---|
| | | MOTION for Judgment of Acquittal by Mark Ian Gaver. (Zonas, James) (Entered: 08/07/2018) |
| 08/08/2018 | 62 | MEMORANDUM in Opposition by USA as to Mark Ian Gaver re 60 MOTION for New Trial , 61 MOTION for Judgment of Acquittal (Gray, Jefferson) (Entered: 08/08/2018) |
| 08/09/2018 | 63 | MEMORANDUM ORDER Denying 60 Motion for New Trial; Denying 61 Motion for Judgment of Acquittal as to Mark Ian Gaver (1). Signed by Judge Richard D. Bennett on 8/9/2018. (bas, Deputy Clerk) . (Entered: 08/09/2018) |
| 09/06/2018 | 64 | Correspondence received from Mark Ian Gaver. (bas, Deputy Clerk) (Entered: 09/06/2018) |
| 09/06/2018 | 65 | ORDER referring the case to Magistrate Judge A. David Copperthite for Attorney Inquiry Hearing as to Mark Ian Gaver. Signed by Judge Richard D. Bennett on 9/6/2018. (jnls, Deputy Clerk) (Entered: 09/06/2018) |
| 09/11/2018 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Mark Ian Gaver. *Attorney Inquiry Hearing* PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 9/11/2018. An interpreter will not be needed. Hearing set for 9/17/2018 11:30 AM in Courtroom 7C, 101 West Lombard Street, Baltimore, Maryland 21201, before Magistrate Judge A. David Copperthite.(Gray, Jefferson) (Entered: 09/11/2018) |
| 09/17/2018 | 66 | Attorney Inquiry Hearing as to Mark Ian Gaver held on 9/17/2018 before Magistrate Judge A. David Copperthite.(FTR Gold) (Hearing held in "5A", not 7C) (stds, Deputy Clerk) (Entered: 09/17/2018) |
| 09/19/2018 | 67 | MOTION to Appoint New Co-Counsel by Mark Ian Gaver. (krs, Deputy Clerk) (Entered: 09/19/2018) |
| 09/20/2018 | 68 | ORDER referring case to Magistrate Judge A. David Copperthite for Attorney Inquiry Hearing as to Mark Ian Gaver. Signed by Judge Richard D. Bennett on 9/20/2018. (jnls, Deputy Clerk) (Entered: 09/20/2018) |
| 09/20/2018 | 69 | MOTION to Compel Release of Documents by Mark Ian Gaver. (jnls, Deputy Clerk) (Entered: 09/20/2018) |
| 09/28/2018 | 70 | MOTION to Withdraw as Attorney by Alan F. Hamisch and James J. Zonas by Mark Ian Gaver. (Zonas, James) (Entered: 09/28/2018) |
| 09/28/2018 | 71 | ORDER referring case to Magistrate Judge A. David Copperthite for Attorney Inquiry Hearing as to Mark Ian Gaver. Signed by Judge Richard D. Bennett on 9/28/2018. (jnls, Deputy Clerk) (Entered: 09/28/2018) |
| 10/01/2018 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Mark Ian Gaver. *Attorney Inquiry Hearing* PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 10/1/2018. An interpreter will not be needed. Hearing set for 10/3/2018 10:00 AM in Courtroom 7B, 101 West Lombard Street, Baltimore, Maryland 21201, before Magistrate Judge A. David Copperthite.(Gray, Jefferson) (Entered: 10/01/2018) |

| Date | # | Description |
|---|---|---|
| 10/02/2018 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Mark Ian Gaver. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 10/2/2018. An interpreter will not be needed. Sentencing set for 11/1/2018 10:00 AM in Courtroom 5D, 101 West Lombard Street, Baltimore, Maryland 21201, before Judge Richard D. Bennett. (Gray, Jefferson) (Entered: 10/02/2018) |
| 10/02/2018 | 73 | Correspondence re: Santander Bank, N.A.'s request for restitution order (Attachments: # 1 Exhibit Exhibit A - Declaration of Bret Bokelkamp)(Ulwick, James) (Entered: 10/02/2018) |
| 10/03/2018 | 74 | Attorney Inquiry Hearing as to Mark Ian Gaver held on 10/3/2018 before Magistrate Judge A. David Copperthite.(FTR: Vockroth) (kvs, Deputy Clerk) (Entered: 10/03/2018) |
| 10/03/2018 | 75 | PAPERLESS ORDER: An attorney inquiry hearing was held on the record, with Defendant present in the courtroom and his counsel present by phone. For the reasons stated on the record, the Court GRANTS defense counsels' motion to withdraw their appearance 70. The Court appoints the Office of the Federal Public Defender to represent Mr. Gaver at sentencing. The parties are directed to contact Judge Bennett's Chambers regarding the sentencing date to determine whether there will be any continuance for new counsel. Signed by Magistrate Judge A. David Copperthite on 10/3/2018. (Chambers) (Entered: 10/03/2018) |
| 10/03/2018 | 76 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Mark Ian Gaver. Signed by Magistrate Judge A. David Copperthite on 10/3/2018. (bas, Deputy Clerk) (Entered: 10/03/2018) |
| 10/03/2018 | 77 | PAPERLESS ORDER finding as moot 67 Motion to Appoint Counsel. Signed by Magistrate Judge A. David Copperthite on 10/3/2018. (Chambers) (Entered: 10/03/2018) |
| 10/10/2018 | 78 | MOTION to Withdraw as Attorney by Laura Abelson by Mark Ian Gaver. (Attachments: # 1 Text of Proposed Order)(Abelson, Laura) (Entered: 10/10/2018) |
| 10/11/2018 | 79 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Mark Ian Gaver held on 7/23/2018Excerpt, before Judge Richard D. Bennett. Court Reporter/Transcriber Mary M. Zajac, Telephone number 410-962-4544. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 11/1/2018. Redacted Transcript Deadline set for 11/13/2018. Release of Transcript Restriction set for 1/9/2019. (mmz, Court Reporter) (Entered: 10/11/2018) |
| 10/11/2018 | 80 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Mark Ian Gaver held on 7/24/2017Excerpt, before Judge Richard D. Bennett. Court Reporter/Transcriber Mary M. Zajac, Telephone number 410-962-4544. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript |

Mark Gaver, #69545018
Federal Correctional Institution
PO Box 779800
Miami, FL 33177-9800

U.S. COURT
FOURTH C
1100 E. MAIN
RICHMOND,
ATTN: Clerk

# LEGAL MAIL



OF APPEALS
RCUIT
ST., SUITE 501
VA 23219
of Court

RECEIVED
U.S. MARSHALS

LEGAL MAIL